SMITH et al. v. BECKFORD & FRANCIS BELTING CO.

(Circuit Court of Appeals, Second Circuit. June 22, 1915.)

No. 314.

PATENTS ⊜328—VALIDITY AND INFRINGEMENT—FIRE ALARM.

The Smith patent, No. 850,681, for a fire and temperature alarm or indicator, claim 1, *held* valid and infringed.

Appeal from the District Court of the United States for the Western District of New York.

This cause comes here upon appeal from a decree finding infringement of letters patent No. 850,681, granted April 16, 1907, to the complainant George L. Smith for "fire and temperature alarm or indicator." The opinion of the District Judge will be found in 221 Fed. 673.

Griggs, Baldwin & Baldwin, of New York City (Geo. T. May, Jr., of Chicago, Ill., and Arthur J. Baldwin, of New York City, of counsel), for appellant.

Clifford E. Dunn, of New York City (Charles C. Linthicum, of Chicago, Ill., and Clifford E. Dunn and Edmund Quincy Moses, both of New York City, of counsel), for appellees.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. In Judge Hazel's opinion there is the following statement of invention:

"By his invention the patentee has provided a pneumatic fire alarm which will automatically indicate a sudden, but not a gradual, rise in temperature at any part of the room or rooms in which the apparatus is placed, or through which the leads pass, irrespective of the original temperature of the room or rooms. The device is operated by the expansion of air in a wire tubing of exceedingly small diameter bore, which is strung along the ceiling of the protected area; such expansion being due to rise of temperature resulting from fire. The tubing is closed at one end and at the other connected to an electric contact apparatus, which closes its circuit whenever the pressure of air in the tube increases."

The claim relied on, which was allowed as filed, is the first, quoted in full in Judge Hazel's opinion. It comprises the following elements:

1. In fire and temperature alarms:

2. A metal tube of small diameter and bore, which is strung along through the rooms to be protected and is closed at one end. This tube contains air, which of course expands when the temperature rises, and, because of the closure at one end, can make exit only at the other end of the tube.

3. A closed chamber, with the interior of which the open end of the tube communicates, and into which the expanding air makes its way.

4. Two electrical contacts, normally out of engagement, but which, when brought into contact, establish a circuit which sounds an alarm.

5. "Means for operating" these contacts, whenever the air in the tube is suddenly expanded by a rapid rise of temperature. The means

shown consist of an outlet in the closed chamber, such outlet being covered by a diaphragm, or similar movable part, which is moved outward when the air flows through the outlet. One contact is on the outside of the diaphragm; as the latter moves, this contact is brought into engagement with the fixed contact.

6. A vent for permitting air to pass slowly to and from the bore of the tube upon a gradual and ordinary variation of temperature. The vent as shown in the specifications is an aperture located in the wall of the closed chamber; the claim is broad enough to admit of its location elsewhere.

7. Means for regulating said vent. This is necessary in order to make the capacity of the vent sufficient to accommodate a rate of discharge which will relieve the air pressure in the bore produced by a *gradual* or ordinary rise in temperature, but will not accommodate abnormal increase of pressure resulting from the *abrupt* rise of temperature produced by a fire. Being choked at the vent by reason of this regulation of its capacity, the expanding air pours through the outlet behind the diaphragm and forces the latter outward, thereby starting the alarm. The specification states that the devices controlling or regulating the vent "can be infinitely varied." The form shown in the patent is as follows: Into the vent hole there is inserted a screw; along the shank of the screw there is a groove, so that when the threads of screw and vent hole engage there is a passageway left through which air may pass from the closed chamber to the flat under side of the screw head. The screw is not fully inserted. Between its head and the wall of the closed chamber there is a washer of porous material, such as porous paper, cloth, or the like. Through the pores of this material, the air, which has come from the interior of the closed chamber along the groove in the shank of the screw, passes out. It is obvious that, if the screw head presses lightly on the porous material, the pores of the latter will accommodate a greater outflow than if the screw head reduced their capacity by compressing them. Either by mathematical calculation, or by experiment, it is ascertained what volume of outflow should be provided for in order to meet the conditions that arise from the size of the various parts of the apparatus and the environment in which it is to operate. When that is ascertained, and the degree of compression to which the washer should be subjected is secured, the vent is "regulated," in the language of the patent, and the apparatus of this claim is ready for use.

We are not altogether sure whether or not the defendant actually contends that the device above described is not patentable; but, if it does, we fully concur with Judge Hazel that the patented combination, although some of its parts are old, is novel, useful, and patentable, and think it unnecessary to add anything to his discussion of the prior art.

The main argument of defendant is in support of the proposition that infringement is not shown. The only ground of contention relates to the "vent" and the "means for regulating said vent." In defendant's apparatus the air in the small bore tubing (closed at one end) passes through an outlet 5, shown on Fig. 2 of the drawing of defendant's device, to a closed chamber, in escaping from which it

operates the electrical contacts. From this outlet *5* there branches out another outlet *4*, which leads to the open air; it is the "vent" through which air passes out of or into the closed tube when the change of temperature is gradual or ordinary. To regulate this vent there is inserted into its mouth, a short length of capillary glass tubing, such tubing as we find in thermometers. By proper proportioning of its bore and its length mathematically, and by testing and experiment, it is ascertained just what size and length will so regulate the vent that in the environment where the apparatus is located it will care for all outflow of air produced by gradual or ordinary rise of temperature. When this is ascertained, and the tube inserted, the vent is regulated, and the apparatus is ready for use.

So far as the record discloses, once properly regulated, the apparatus of both patentee and defendant will operate successfully without further regulation, until its environment changes or time deteriorates some of the parts. By reason of the circumstance that the patentee's means for regulating consists in part of a screw, the depth of insertion of which into a threaded hole may be readily changed with a screw driver, it may properly be said that his means for regulating the vent is "adjustable." There is a vigorous dispute between the parties as to whether defendant's means is also adjustable, by cutting off part of the capillary glass tube, or otherwise. But it is not necessary to determine that question of fact. Adjustability of the regulator is not a part of this claim; it is an element of claim 2, which includes as an element "means for *adjustably* regulating the passage of air through said vent." But claim 2 is not declared upon in this suit. That defendant's apparatus infringes claim 1 we are entirely satisfied.

Decree affirmed, with costs.